UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES     Plaintiff

v.     Criminal Action No. 3:20-cr-61-RGJ

KHALID ASHANTI RAHEEM     Defendants
DESTINEY LASHAI RHODES
FRANK TRAMMELL, JR., ET AL

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on pretrial motions filed by the United States and co-defendants Khalid Ashanti Raheem ("Raheem"), Frank Trammell, Jr., ("Trammell"), and Destiney Lashai Rhodes ("Rhodes," collectively "Defendants"). Trammell moves to dismiss Counts 17, 18 [DE 360], and Count 19 [DE 361], and to suppress all evidence seized as a result of a search warrant. [DE 362]. Rhodes moves for an evidentiary hearing on the United States' geolocation expert [DE 363], and to dismiss Count 19 of the Fourth Superseding Indictment. [DE 364]. Raheem moves to dismiss Count 20 of the Fourth Superseding Indictment. [DE 367]. The United States moves to seal a document. [DE 382]. The United States Responded to Trammell's motion to suppress [DE 381], Defendants' motions to dismiss [DE 384], and Rhodes' motion for an evidentiary hearing. [DE 385]. Trammell replied to the response on motion to dismiss. [DE 386]. For the reasons below, Defendants' Motions to Dismiss Counts 17, 18, 19, and 20 [DE 360; DE 361; DE 364; DE 367] are **DENIED**, Trammell's Motion to Suppress [DE 362] is **DENIED**, Rhodes' Motion for Evidentiary Hearing on USA Geolocation Expert [DE 363] is **DENIED as moot**, and **t**he United States' Motion to Seal [DE 382] is **GRANTED**.

## BACKGROUND

In March 2019, the Federal Bureau of Investigation ("FBI"), began investigating individuals involved in narcotics trafficking and distribution. [DE 383 at 1955]. The FBI identified Raheem, Trammell, and Rhodes as individuals they believed were involved. [DE 383]. All three were indicted in July 2020 on multiple counts. [DE 15].

Currently pending against Raheem in the Fourth Superseding Indictment are Count 1, Conspiracy to Distribute Controlled Substances; Counts 12-13, Distribution of Controlled Substances; and Count 20, Possession of a Firearm by a Prohibited Person. [DE 345 at 1623-25, 1629-30].

Currently pending against Trammell in the Fourth Superseding Indictment are Count 1, Conspiracy to Distribute Controlled Substances; Counts 2-7, 9, and 11-14, Distribution of Controlled Substances; Count 15, Possession with Intent to Distribute Fentanyl; Counts 17 and 18, Possession of a Firearm by a Prohibited Person; and Count 19, Possession of a Firearm in Furtherance of a Drug Trafficking Crime. [*Id.* at 1623-29].

Currently pending against Rhodes are Count 1, Conspiracy to Distribute Controlled Substances; Counts 2-3 and 6-10, Distribution of Controlled Substances; Count 15, Possession with Intent to Distribute Fentanyl; Count 16, False Statement During the Purchase of a Firearm; and Count 19, Possession of a Firearm in Furtherance of a Drug Trafficking Crime. [*Id.*].

## DISCUSSION

**I.    The Motions to Dismiss [DE 360; DE 361; DE 364; DE 367].**

Trammell moves to dismiss Counts 17, 18[1] [DE 360] and Count 19 of the Fourth Superseding Indictment [DE 361], Rhodes moves to dismiss Count 19 [DE 364], and Raheem

---

[1] Trammell points out in his brief that he is a prohibited person due to his status as a felon. [DE 360 at 1782]. Raheem is as well. [DE 345 at 1629-30].

2

moves to dismiss Count 20. [DE 367]. Rhodes and Raheem adopt Trammell's argument at [DE 361] without adding further argument, so the Court will reference only Trammell's brief for these arguments. [*See* DE 364 at 1810; DE 367 at 1819]. The United States opposes these motions in a single response, [DE 384], to which Trammell replied. [DE 386].

### i. Analysis

Defendants argue the charges against them should be dismissed because the charging statutes misapply congressional power or violate the Second Amendment's guarantee to the right to self-defense considering the Supreme Court's recent holding in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen.* 142 S. Ct. 2111, 2122 (2022). [DE 360 at 1782-88; DE 361 at 1792]. The United States argues the Second Amendment does not extend to felons, drug distribution activity, or crimes of violence, and that the charging statute validly applies congressional power. [DE 384 at 2023].

### a. Congressional Power

Defendants argue Counts 17, 18, and 20 are an overextension of Congressional power under the Commerce Clause, because 18 U.S.C. § 922(g) prohibits felons from possessing firearms "affecting commerce." [DE 360 at 1784]. They challenge this because Congress can only regulate interstate commerce, and the statute lacks the modifiers "interstate or foreign." [*Id.* at 1782-88]. The United States argues § 922(g) has a sufficient nexus with interstate commerce and that this argument has long been settled in the Sixth Circuit, and cites *United States v. Turner*, 77 F.3d 887, 888 (6th Cir. 1996). [DE 384 at 2036-37].

Like Defendants, Turner argued that "§ 922(g)(1) violates the Commerce Clause under the standard established by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 [] (1995)." *Turner*, 77 F.3d at 888. The Sixth Circuit reasoned that "[r]equiring the government in each case

to prove that a felon has possessed a firearm "in or affecting commerce" ensures that the firearm possession in question affects interstate commerce and saves § 922(g)." *Id.* at 889. The Court held "that § 922(g)(1) represents a valid exercise of legislative power under the Commerce Clause." *Id.* Thus, the Court finds Counts 17, 18, and 20 are valid exercises of Congressional power. *See United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2 (6th Cir. Mar. 7, 2022) (discussing *Turner* and commerce clause challenge to § 922(g) and stating, "this court has continued to reject Commerce Clause challenges to section 922(g)(1)").

      b. Second Amendment

Defendants argue Counts 17, 18, 19, and 20 are unconstitutional because the Second Amendment guarantees them a right to self-defense. [DE 360 at 1785-1788; DE 361 at 1790-93]. Trammell and Rhodes argue Count 19 is unconstitutional as existing precedent was decided before Supreme Court recognition of the right to keep firearms for self-defense, and "[m]ere involvement in a drug trafficking crime does not constitute a waiver of" this right, for which § 924(c) contains no exception. [DE 361 at 1790-92]. The United States argues the Supreme Court has upheld bans on felons in possession and the Second Amendment does not extend to "possessing a firearm while committing violent crimes or dealing drugs." [DE 384 at 2025-28].

In *D.C. v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that the Second Amendment codified a preexisting "individual right to keep and bear arms" upon "responsible, law-abiding citizens," and that the "central component" of the right is self-defense. *Id.* at 581, 592, 635. As a result, the Court concluded that "a ban on handgun possession in the home violates the Second Amendment." *Id.* at 635. The Supreme Court also simultaneously held that "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and upheld the "longstanding prohibition[ ] on the possession of firearms by felons." *Id.* at 626. The Court

4

reiterated this in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), and recently affirmed the holdings in *Bruen.* 142 S. Ct. at 2122 (noting that *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense" and holding individuals have a right to possess of a handgun for self-defense outside the home "consistent with *Heller* and *McDonald*").

Defendants argue that even with the holding in *Bruen*, none of the opinions have defined "law-abiding" or explained how that status should be determined. [DE 360 at 1786]. Defendants suggest the question for this Court should be: "Is a prior conviction for one or more felonies sufficient proof that a person who possesses a firearm is not law-abiding and thus is not entitled to keep a firearm for self-defense?" [*Id.*]. Bound by Supreme Court precedent upholding "longstanding prohibitions on the possession of firearms by felons," this Court must answer "yes." *Heller*, 554 U.S. at 626; *Bruen,* 142 S. Ct. at 2122.

Finally, regardless of a firearm's alleged use for self-defense, "it cannot seriously be contended that the Second Amendment guarantees a right to use a firearm *in furtherance of drug trafficking*." *United States v. Potter*, 630 F.3d 1260, 1261 (9th Cir. 2011) (emphasis in original); *Heller*, 554 U.S. at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for *lawful* purposes[.]") (emphasis added). The Sixth Circuit has explicitly held that self-defense is irrelevant to a drug trafficking offense. *See United States v. Poindexter, et al.*, 942 F.2d 354, 360 (1991). A defendant's "alleged reasons for being armed, such as for self-protection, do not constitute defenses." *Morris v. United States*, 14 F. App'x 345 (6th Cir. 2001). *Heller* did not overrule these cases or explicitly change the availability of self-defense in drug trafficking offenses. *See United States v. Jones*, No. 3:20-CR-102, 2022 WL 445886, at *4 (S.D. Ohio Feb. 14, 2022) (citing *Poindexter*, *Morris*, *Heller*, and stating, "The

Court does not believe Heller has changed the availability of a self-defense defense to a § 924(c) charge.").

The Court thus finds Counts 17, 18, 19 and 20 are constitutional under the Second Amendment.[2] *See United States v. Smith*, No. CRIM. 6:13-34-KKC, 2015 WL 4458891, at *20 (E.D. Ky. July 21, 2015), *aff'd,* 656 F. App'x 70 (6th Cir. 2016) ("Plainly, a felon does not have a fundamental right to possess firearms, and *Heller* explicitly notes that the prohibition on the possession of firearms by felons is rational."); *Goolsby*, 2022 WL 670137, at *3 (in the context of Second Amendment self-defense challenge, "Goolsby brings his claim as an as-applied challenge on the ground that he needed a firearm to protect himself from a credible threat of violence. But that framing doesn't help him . . . he identifies no decision of this court (or any other) holding that a heightened personal need for self-defense trumps the government's interest in public safety."); *and United States v. Potter*, 630 F.3d 1260, 1260 (9th Cir. 2011) ("Even if he kept the firearm also to protect himself and his home, he committed a crime because he possessed the firearm in furtherance of drug trafficking."); *see also United States v. Burrell*, No. 21-20395, 2022 WL 4096865, at *3 (E.D. Mich. Sept. 7, 2022) ("Federal courts nationwide have rejected similar facial constitutional challenges to the felon-in-possession statute."); *United States v. Ingram*, No. CR 0:18-557-MGL-3, 2022 WL 3691350 (D.S.C. Aug. 25, 2022); and *United States v. Nutter*, No. 2:21-CR-00142, 2022 WL 3718518, at *8 (S.D.W. Va. Aug. 29, 2022) (citing cases and remarking, "This Court has not identified any district court that has granted a similar motion to dismiss any criminal charge under Section 922(g), to date.").

---

[2] In reply, Trammell argues the United States failed to meet its burden of demonstrating validity. [DE 386 at 2057-59]. Under the above analysis, the Court disagrees.

*ii.   Conclusion*

As the Court has found the counts a valid exercise of congressional power and has also found them constitutional under the Second Amendment, the Court **DENIES** Defendants' Motions to Dismiss [DE 360; DE 361; DE 364; DE 367].

## II.   Trammell's Motion to Suppress [DE 362].

Trammel moves to suppress all evidence seized under a search warrant for his home, arguing there was no nexus established. [DE 362 at 1795-99]. The United States argues Trammell overlooks significant facts in the warrant affidavit [DE 381 at 1923-41]. The United States also moved separately to file the warrant application under seal. [DE 382; DE 383].

*i.   Background*

Based on an application and affidavit by FBI Special Agent C. Ryan Berthay ("Berthay"), United States Magistrate Judge Colin H. Lindsay authorized a residence search warrant for the "Clay Street Residence." [DE 383 at 1946, 1998]. When executing this search warrant, law enforcement seized firearms and ammunition, controlled substances, cell phones, currency, and drug paraphernalia. [DE 381 at 1924].

*ii.   Standard*

"It is well settled that in seeking suppression of [physical] evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014), *as amended* (Oct. 21, 2014).

An issuing judge will grant a warrant if the allegations contained within the warrant affidavit establish that there is "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). The reviewing court must give great deference to the magistrate judge's finding of probable cause, (*United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)), and should only overturn the validity of a search warrant issued where the magistrate judge "arbitrarily exercised his or her authority." (*United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013)). The reviewing court is to examine the totality of the circumstances within the affidavit. *United States v. Ferguson*, 8 F.3d 385, 391–92 (6th Cir. 1993). Line-by-line scrutiny of the supporting affidavit is inappropriate, and the reviewing court must limit its analysis to the "information presented in the four corners of the affidavit." *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

    iii.   *Analysis*

Trammell argues there was no probable cause to issue the search warrant because it did not establish a nexus, as the affidavit has insufficient supporting facts. [DE 362 at 1795-99]. Trammell argues that, in the supporting affidavit, Berthay states "his belief that Trammell stored narcotics, firearms and proceeds at this address[,] [b]ut he provided no reasons to support this belief." [*Id.* at 1797]. He contends that "the only incident suggesting that drugs might be found at [the Clay Street Residence] had occurred . . . over three months before" the search warrant application and that one incident does not establish nexus. [*Id.* at 1798]. He argues that "evidence showing [Trammell's] involvement in drug dealing terminated" nearly a month prior and that the statements connecting him to the Clay Street Residence "do not claim that he currently resided at

that address." [*Id.* at 1798-99]. The United States argues the search warrant was specific in laying out probable cause for the Clay Street Residence and Trammell, including Trammell's criminal history and his involvement in a street gang and drug trafficking organization, his connection to the residence, the residence's connection to criminal activity, and Trammell's grand jury indictment. [DE 381 at 1923-30].

The Court looks at the totality of the circumstances within the affidavit, deferring to the issuing magistrate's finding of probable cause. *See Jenkins*, 396 F.3d at 760, *Allen*, 211 F.3d at 973, *Brown*, 732 F.3d at 573, *Ferguson*, 8 F.3d at 391–92, and *Jackson*, 470 F.3d at 306. The Sixth Circuit has consistently held that a magistrate may infer a nexus between the place to be searched and the evidence sought, based on the nature of the evidence and the type of offense. *See, e.g.*, *United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) ("an issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence"); *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence"); and *United States v. Berry*, 565 F.3d 332, 339 (6th Cir. 2009) ("there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home.").

Here, the affidavit included at least six controlled narcotics purchases from Trammel for six months, leading up to less than four weeks before the search warrant issuance. [DE 383 at 1966-86]; *see United States v. Reed*, 993 F.3d 441, 448–49 (6th Cir. 2021) ("When an officer identifies recent, reliable evidence of drug activity, that activity can provide a reason to believe that drugs or other evidence of crime will be found in the suspect's home beyond the suspect's status as a drug dealer alone." (citations omitted)); *and United States v. Hython*, 443 F.3d 480,

485–86 (6th Cir. 2006) ("In *Greene*, a search was upheld despite the fact that the last of 12 controlled buys took place 23 months prior to the issuance of the warrant.") (citing *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001). The affidavit also noted the Clay Street Residence was leased to Rhodes, whom Trammell sold drugs with and exited the residence with many times, and it stated that Trammell resided there daily and that it was Trammell's "known" residence. [DE 383 at 1956-86]. While Trammell argues that this is unsupported, the affidavit notes throughout that physical surveillance was conducted, including at the Clay Street Residence, and that GPS data showed Trammel's location there as well. [*Id.*]. The affidavit also included that Trammell was a felon and that his social media showed possession of firearms. [*Id.* at 1957]. Based on this evidence, it was reasonable for the magistrate to infer that Trammell would keep guns or drugs in his residence, and that the search location was his residence. *Williams*, 544 F.3d at 688; *Gunter*, 551 F.3d at 481; *Berry*, 565 F.3d at 339. Under the totality of the circumstances, the affidavit provided probable cause for the search warrant.[3] Thus, Trammell's Motion to Suppress [DE 362] is **DENIED**. Additionally, based on previous standing orders of the Court, the United States Motion to Seal [DE 383] is **GRANTED.** *See* LCrR 49.4.

### III.   Rhodes' Motion for Evidentiary Hearing on USA Geolocation Expert [DE 363].

Rhodes moved for an evidentiary hearing "to determine whether the proposed expert testimony of Detective O'Daniel should be excluded." [DE 363 at 1803]. At the final pretrial conference on September 21, 2022, the United States explained that they no longer planned to call the expert witness and would respond in writing to the motion, which Rhodes agreed may resolve the motion. [Hearing Transcript 5:18-6:5]. Rhodes notified the Court on October 14, 2022, that after receiving the United States' revised expert report, she was withdrawing the motion. Thus,

---

[3] Because the Search Warrant was supported by probable cause, the Court need not determine whether the good-faith exception applies, as the United States argues. [DE 381 at 1938-41].

10

the Court **DENIES as moot** Rhodes Motion for Evidentiary Hearing on USA Geolocation Expert [DE 363].

## CONCLUSION

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED that**

1. Defendants' Motions to Dismiss Counts 17, 18, 19, and 20 [DE 360; DE 361; DE 364; DE 367] are **DENIED**;

2. Trammell's Motion to Suppress [DE 362] is **DENIED**;

3. Rhodes' Motion for Evidentiary Hearing on USA Geolocation Expert [DE 363] is **DENIED as moot**;

4. The United States' Motion to Seal [DE 382] is **GRANTED;**

Rebecca Grady Jennings, District Judge
United States District Court

October 17, 2022

Cc: Counsel of Record